UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

CHANEL LEWIS,

<em>Plaintiff,</em>

-against-

THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO
(SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD
#13592) and POLICE OFFICERS JOHN DOE #1-4, (the name "John
Doe" being fictitious as the true names are presently unknown), individually
and in their official capacity as New York City Police Officers,
<em>Defendants.</em>

-----------------------------------------------------------------------X

**COMPLAINT**

JURY TRIAL
DEMANDED

*Civil Action No.*_____

Plaintiff **CHANEL LEWIS,** by her attorneys **NOVO LAW FIRM, PC,** complaining of

Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD**

**#9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE**

**OFFICERS JOHN DOE #1-4,** respectfully alleges, upon information and belief:

<u>PRELIMINARY STATEMENT</u>

1.  This is a civil rights action in which Plaintiff **CHANEL LEWIS** seeks relief for Defendants'
    violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42 U.S.C. §
    1988, and of rights secured by the First, Fourth and Fourteenth Amendments to the United
    States Constitution, and of rights secured under the laws and Constitution of the State of New
    York.  Plaintiff seek damages, compensatory and punitive, affirmative and equitable relief, an
    award of costs, interest and attorney's fees, and such other and further relief as the Court deems
    equitable and just.

<u>JURISDICTION AND VENUE</u>

2.  Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 and § 1331, there being an
    action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.  Jurisdiction is also invoked herein pursuant to the First, Fourth and Fourteenth Amendments to

1

the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

4.    Plaintiff respectfully requests that the Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in the action within the original jurisdiction of the court that are formed as part of the same case or controversy.

5.    That the arrest and imprisonment took place in the State of New York.

6.    Venue herein is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

7.    Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38(b).

8.    Upon information and belief and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and the place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof was duly served on Plaintiff's behalf on the Comptroller of Defendant **THE CITY OF NEW YORK** and that, thereafter, said Comptroller for Defendant **THE CITY OF NEW YORK** refused or neglected for more than thirty (30) days, and up to the commencement of the action, to make any adjustment or payment thereof, and that, thereafter, and within the time provided by law, the action was commenced.

9.    Upon information and belief, pursuant to General Municipal Law §50(h), a hearing was held at the office of a designated agent.

## PARTIES

10.    Plaintiff **CHANEL LEWIS** was, and still is, an individual residing at 950 Aldus Street, Apartment 5D, County of Bronx, City of New York and State of New York.

11.     Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal corporation duly incorporated and existing under and by virtue of the laws of the State of New York.

12.     Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant **THE CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by **NEW YORK CITY POLICE DEPARTMENT**.

13.     Defendants **POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** were, and still are, at all times relevant herein, duly appointed and acting officers, servants, employees and agents of New York City Police Department a municipal agency of Defendant **THE CITY OF NEW YORK**.

14.     Defendants **POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as an officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK** were acting for, and on behalf of, and with the power and authority vested in them by Defendant **THE CITY OF NEW YORK** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

15.     On September 21, 2015, a sworn Notice of Claim stating, among other things, the time when and the place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof was duly served on Plaintiff's behalf on the Comptroller of Defendant **THE CITY OF NEW YORK** and that, thereafter, said Comptroller for Defendant **THE**

3

**CITY OF NEW YORK** refused or neglected for more than thirty (30) days, and up to the commencement of this action, to make any adjustment or payment thereof, and that, thereafter, and within the time provided by law, this action was commenced.1

16. Pursuant to General Municipal Law § 50(h), a hearing was held on April 19, 2016 at the office of a designated agent.

## FACTS

17. Plaintiff **CHANEL LEWIS** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

18. On or about March 2, 2014, at approximately 02:00 A.M., in front of, or around 2520 Park Avenue located in the County of Bronx, City of New York and State of New York. Plaintiff **CHANEL LEWIS** was a lawful operator in her vehicle at the above said location when she became the victim of police misconduct, brutality and/or retaliation.

19. Plaintiff had lawfully parked her vehicle in the aforementioned location when she, without cause, was approached by NYPD police officers approached by Defendant **POLICE OFFICER RUBEN SERRANO (SHIELD #13592)** and **POLICE OFFICER JOHN DOE #1** and asked for identification.

21. The defendants pulled my pocketbook off of her arm and rummaged through it, took her cell phone and threw it to the ground and tossed her pocketbook across the street.

22. Despite Plaintiff's full cooperation, without any probable cause or reasonable explanation Defendants grabbed her, pushed against the wall, unlawfully searched her, and unlawfully handcuffed her.

23. Upon information and belief, Defendants forced Ms. Lewis to take two breathalyzer tests, both of which were negative.

24. Upon information and belief, additional **POLICE OFFICERS JOHN DOES** arrived to the scene, pulled up in a police van, two (2) got out, and she therefore submitted to a wrongful

---

1 Plaintiff's Notice of Claim was deemed timely with respect to state law claims of Malicious Prosecution and Intentional Infliction of Emotional Distress *nunc pro tunc* by Honorable Justice Mitchell J. Danziger of the Supreme Court, County of

arrest (Arrest ID: B14614921-N) without any reasonable suspicion or probable cause to justify defendants' action. 2

25. At no time did Plaintiff resist or disobey the arresting officers' commands and she was never charged with such crime.

26. The passengers of Mr. Lewis's vehicle at the time, Ms. LATRESE NIGHT, MS. BRANDY PITT, MS. CHANEA NEWTON, MS. CHANEL GLENN AND MS. TIFFANY DOE were left on the side of the street, left stranded by Defendants **POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-2** and forced to walk miles to safety.

27. Defendant **POLICE OFFICER RUBEN SERRANO (SHIELD #13592)** then took the keys to the above-mentioned 2011 Jeep Wrangler and drove it to the precinct to which Ms. Lewis was transported.

28. Upon information and belief, Plaintiff **CHANEL LEWIS** was never given a Vehicle Seizure form.

29. Upon information and belief, during the transportation Ms. Lewis was subject to constant insults and harassments by Defendants.

30. Upon information and belief, during the transportation Defendants denied and/or otherwise ignored Plaintiff's numerous please for medical attention and handcuffs to be loosened.

31. Plaintiff **CHANEL LEWIS** was transported to the 40th Precinct where she was fingerprinted, photographed and otherwise processed and placed in a dirty, infested holding cell.

32. Upon information and belief, Plaintiff's pleas that she has an asthma condition and she needs her inhaler were ignored and/or otherwise denied.

33. Upon information and belief, Plaintiff's friends arrived to the Precinct, but Defendants refused to release Plaintiff's vehicle to their custody.

---

Bronx on March 24, 2016.
2 Even if at one time there was reasonable suspicion or probable cause for the stop of the vehicle (and Plaintiff is not conceding that there was), any and all potential reasonable suspicion and probable cause was vitiated prior to Ms. Lewis's arrest.

34.     Upon information and belief, while Plaintiff **CHANEL LEWIS** was incarcerated in the holding Defendant **POLICE OFFICER JUAN SANTIAGO (SHIELD #9507)** approached her and started falsely accusing her that she "almost killed" him.

35.     Upon information and belief, Defendants **POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** denied and ignored Ms Lewis's several requests to make a phone call until approximately 5:00AM when she was given permission to call her friend and asked her to look after her children.

36.     After spending several hours in a cell of the 40th Precinct, Plaintiff **CHANEL LEWIS** was transported to Central Booking, where he was once again processed, fingerprinted, photographed and placed in a dirty, infested holding cell where she spent many more hours.

37.     Upon information and belief, Plaintiff's several requests to call her attorney were denied and/or otherwise ignored.

38.     Plaintiff **CHANEL LEWIS** was held in custody for over twenty three (23) hours until finally she was brought in front of the judge and was released on her own recognizance on or about 11:00PM on March 3, 2014.

39.     Upon release Plaintiff **CHANEL LEWIS** went to the 40th Precinct to retrieve her property and vehicle, but Defendants refused to release her vehicle stating that it was documented as a weapon of assault.

40.     Plaintiff **CHANEL LEWIS** had to attend numerous proceedings until May 29, 2015 when she was found not guilty on all charges by a jury.

41.     Upon information and belief, despite Plaintiff's numerous requests her vehicle was not released by New York City Police Department throughout trial, but Ms. Lewis still had to pay for vehicle financing and insurance.

42.     Upon information and belief, on or around August 5, 2015 Plaintiff's vehicle was sold by Wells Fargo bank.

43.    Said police misconduct and malicious prosecution violated the Civil Rights of Plaintiff **CHANEL LEWIS**.

44.    There is no question that this ordeal has greatly aggravated and exacerbated her emotional damages, her post-traumatic stress disorder and has otherwise affected her mentally, emotionally and psychologically. Additionally, and as a further result of this ordeal, which was instituted and maintained by Defendants, Plaintiff **CHANEL LEWIS** has suffered substantial actual damages including and not limited to, legal fees and court costs, expenses of defending the prosecution, extreme emotional distress, aggravation, humiliation, loss of enjoyment of life, loss of reputation, sleeplessness, headaches, nightmares, further fear of arrest and other incidental and consequential damages, which were reasonably foreseeable by Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983 BY THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4

45.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

46.    By their conduct and actions in arresting, searching, imprisoning, failing to intercede on behalf of Plaintiff and in failing to protect him from the unjustified and unconstitutional treatment he received at the hands of Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

47.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical,

psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A SECOND CAUSE OF ACTION
### DERELICTION OF DUTY. DELIBERATE INDIFFERENCE
### and FAILURE TO INTERCEDE  BY DEFENDANTS THE CITY OF NEW YORK,
### POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN
### SERRANO (SHIELD #13592)  and POLICE OFFICERS JOHN DOE #1-4

48.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

49.     Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592)  and POLICE OFFICERS JOHN DOE #1-4** were under a duty of safeguarding the public and ensuring the appropriate execution of Defendant's role.

50.     Plaintiff duly relied on Defendants' fulfillment of their New York City Policing duties.

51.     Defendants had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence.

52.     At the time of the incidents, Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** were observing and aware of the wrongful acts against Plaintiff.

53.     At the time of the incident, Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** neglected to intervene on Plaintiff's behalf in dereliction of their duty to Plaintiff and in depraved indifference to Plaintiff's well-being.

54.     Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592)  and POLICE OFFICERS JOHN DOE #1-4** violated Plaintiff's constitutional rights when they

failed to intercede and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

55. Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence by assault, abuse and punishments.

56. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

57. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A THIRD CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL**
**HARM AND/OR DISTRESS**

58. Courts have held that continuous and coercive harassment *can* establish an IIED cause of action. *Alexander v. Unification Church of America*, 634 F.2d 673, 678–679 (2d Cir.1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes); *Green v. Fischbein Olivieri Rozenholc & Badillo*, 119 A.D.2d 345, 507 N.Y.S.2d 148 (1st Dep't 1986) (baseless eviction proceedings against plaintiff-tenant by landlord, disruption in services, deterioration of living conditions, interference with mails, verbal abuse of plaintiff and his guests). *But see, Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995) (finding plaintiff had not established an IIED claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss the basis of those complaints with others.").

59. A timely Notice of Claim was filed with the City of New York.

60. Because many of these "last actionable acts" occurred within the statute of limitations period, the action is not time-barred. *Cf. Leonhard v. United States*, 633 F.2d at 613 (holding that under

general principles of New York law, the statute of limitations " 'runs from the commission of the last wrongful act.' ")(citations omitted).

.       Hon. Denise L. Cote of this district recently reached a similar conclusion on this issue. *Bonner v. Guccione,* 94 Civ. 7735, slip. op. at 7–15, 1996 WL 22355 (S.D.N.Y. January 17, 1996)(holding where last act of an uninterrupted course of actionable conduct falls within statute of limitations, plaintiff permitted to assert IIED claim for entire course of conduct, even those acts beyond the statute of limitations). *Cf. Leonhard v. United States,* 633 F.2d at 613 (holding that under New York law where certain continuous wrongs are alleged, the last wrongful act triggers the statute of limitations).

61.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

62.     Under the color of state law, Defendants intentionally caused continuous emotional distress and damage to Plaintiff.  The acts and conduct of Defendants were the direct and proximate cause of continuous emotional distress emotional injury to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

63.     Upon information and belief, Defendants committed multiple acts against Plaintiff, which invaded his interests and inflicted injuries upon his throughout all stages of investigation, the continuous detention and the hearings, and trials, which cumulatively amounted to intentional infliction of emotional harm and/or distress.

64.     The emotional harm and/or distress continues to present day.

65.     As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FOURTH CAUSE OF ACTION
### NEGLIGENCE AND/OR GROSS NEGLIGENCE

66.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

67.    Defendants negligently or grossly negligent caused injuries and otherwise damaged Plaintiff. The acts and conduct of Defendant were the direct and proximate cause of injury to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

68.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**MALICIOUS PROSECUTION UNDER THE**
**UNITED STATES CONSTITUTION and 42 U.S.C. § 1983 AND**
**NEW YORK STATE CLAIM OF MALICIOUS PROSECUTION**

69.    Plaintiff **CHANEL LEWIS** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

70.    Defendants' actions with regard to the institution and maintenance of the criminal prosecution were committed wantonly and with a reckless disregard for whether a reasonable ground of suspicion existed, supported by the circumstances, which would lead a reasonably prudent person to believe that Plaintiff had committed a crime.

71.    By the actions described above, Defendants initiated a prosecution against Plaintiff **CHANEL LEWIS**.

    By the actions described above, Defendants caused Plaintiff to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

72.    Defendants arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidating Plaintiff for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

73.    Defendants acted with intent to do harm to Plaintiff without excuse or justification.

74.    The legal process was terminated in favor of Plaintiff.

75.    A timely Notice of Claim was filed with the City of New York.

76. To state a cause of action for malicious prosecution under §1983, Plaintiff must establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiffs favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks omitted); see also *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994). In this case, it is undisputed (1) criminal proceedings were initiated and continued against plaintiff, and (2) the proceedings were terminated in her favor.

77. By the actions described above, Defendants lacked probable cause to believe the proceeding could succeed.

78. The charges were totally unfounded and unjust and unsupported by the evidence.

79. In fact, no probable cause existed to support a conviction and thus, actual malice by Defendants may additionally be inferred by the lack thereof.

80. That the defendants were acting out of anger and/or to justify their previous missteps when the decision was made to charge.

81. The charges were ultimately terminated in favor of Plaintiff **CHANEL LEWIS**.

82. Defendants were at all times aware that the dealership and its agents, employees and/or representatives had made a clerical error with the paperwork.

83. Defendants nonetheless instituted a criminal case against Plaintiff **CHANEL LEWIS** for an improper purpose -- namely by following Defendant's false accusations.

84. Defendants continued the malicious prosecution of Plaintiff **CHANEL LEWIS** even after she had been arrested.

85. Defendants' false accusations were done intentionally and maliciously to mislead the Honorable Criminal Court.

86. As a result of the foregoing, Plaintiff **CHANEL LEWIS** was deprived of her liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SIXTH CAUSE OF ACTION
### MALICIOUS ABUSE OF PROCESS BY DEFENDANTS POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592)  and POLICE OFFICERS JOHN DOE #1-4

87.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

88.   The individual defendants issued legal process to place Plaintiff under arrest.

89.   The individual defendants arrested Plaintiff in order to obtain collateral objectives outside the legitimate end of legal process, to wit, to cover up their assault Plaintiff **CHANEL LEWIS.**

90.   As a direct and proximate result of this unlawful conduct, Plaintiff **CHANEL LEWIS** sustained the damages alleged herein.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### UNLAWFUL STOP AND SEARCH UNDER THE UNITED STATES CONSTITUTION and 42 U.S.C. § 1983 BY DEFENDANTS POLICE OFFICER JUAN SANTIAGO (SHIELD #9517), POLICE OFFICER RUBEN SERRANO (SHIELD #13592)  and POLICE OFFICERS JOHN DOE #1-4

91.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

92.   Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff **CHANEL LEWIS** without reasonable suspicion.

93.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE COMMON LAW OF THE STATE OF NEW YORK VIA BATTERY AND ASSAULT

94.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

95.   Defendant **THE CITY OF NEW YORK** is vicariously liable to Plaintiff for the individual Defendant's **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and**

13

**POLICE OFFICERS JOHN DOE #1-4,** common tort of battery and assault via the principle of *respondeat superior* and that New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

96. Defendants committed a battery on Plaintiff as described above, while in custody; including but not limited to placing Plaintiff in handcuffs.

97. The above-mentioned abuse was harmful, un-consented, and unjustified and in so doing, Defendant, violated the laws and Constitution of the State of New York and otherwise violated Plaintiff's rights under New York Law.

98. That on the aforementioned time and place, Defendants committed the tort of assault against Plaintiff by causing her to be in apprehension of imminent, harmful and offensive touching and in so doing, Defendants violated the laws and Constitution of the State of New York and otherwise violated Plaintiff's rights under New York Law.

99. That by reason of the battery and assault, Plaintiff was harmed physically and emotionally, all while unlawfully and illegally detained, and that Plaintiff was otherwise harmed as a result of the Defendant's actions

100. That by reason of the aforesaid committed by Defendants, Plaintiff suffered and continues to suffer physical and emotional injury and that he was otherwise damaged.

101. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A NINTH CAUSE OF ACTION
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION and TRAINING

102. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

103. Defendant **THE CITY OF NEW YORK** negligently hired, screened, retained, supervised and trained Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN**

SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4 and its employees.

104. A timely Notice of Claim was filed by Plaintiff.

105. As a result of the foregoing, Plaintiff was deprived of their liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A TENTH CAUSE OF ACTION
### VIOLATION OF SUBSTANTIVE DUE PROCESS

106. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

107. Defendants, individually and collectively are liable pursuant to 42 U.S.C. § 1983 for abuses against Plaintiff that shock the conscience in violation of the Fourteenth Amendment to the United States Constitution.

108. Defendants, individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of Article 1, § 5 of the New York State Constitution.

109. Defendants, individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of New York law, rules and regulations.

110. The individual defendants issued legal process to place Plaintiff under arrest. On or about March 2, 2014, Defendants did, with actual malice, compose and swear out a false criminal complaint against Plaintiff and instituted the criminal case against Plaintiff. There was intent to do harm without justification. The use of process was in a manner to obtain a collateral objective detailed *infra* in Plaintiff's claim for *Monell* Liability.3

---

3 "A claim to recover damages for abuse of process cannot be based on the mere commencement of an action by summons and complaint, without unlawful interference with person or property" (Island Fed. Credit Union v. Smith, 60 A.D.3d 730, 875 N.Y.S.2d 198). All three elements must be established in order to have a cause of action for abuse of process (see id.; see also Mago v. Singh, 47 A.D.3d 772, 851 N.Y.S.2d 593 [a counterclaim failed because it failed to allege "any actual misuse of the process to obtain an end outside its proper scope"]). In order for a party to bring a claim for abuse of process, three elements must be met: (1) there must be "regularly issued process, either civil or criminal;" (2) there must be "an intent to do harm without excuse or justification;" and (3) there is a "use of the process in a perverted manner to obtain a collateral objective" (Curiano v. Suozzi, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324).

111.    It is clear that Claimant was deprived of her property without probable cause for seizing the vehicle during the pendency of her legal proceedings.  In fact, in this case Claimant was permanently deprived of her property because her vehicle was sold on or about August 5, 2015.  The vehicle remained in **THE CITY OF NEW YOR**K's exclusive control and possession until that date.  Claimant and her criminal defense attorney were contacting members of the NYPD and the ADA as well as employees of the impound lot designated by **THE CITY OF NEW YORK** from the time the vehicle was seized up through and until the vehicle was sold on or about August 29, 2015.

112.    Additionally, the continued deprivation of the vehicle violated several sections of the New York City's Civil Administrative Code.  There was no prompt hearing and specifically there also was no "Retention Hearing".  In fact, there was no hearing at all where **THE CITY OF NEW YORK** would have had the burden to show that the continued impoundment constituted a valid deprivation.  In this case, it most certainly did not

113.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

114.    At the time of the arrest, Plaintiff's vehicle was seized.  However, Plaintiff was never given a Vehicle Seizure Form.  Nor was one ever mailed to her.  The vehicle was owned by Plaintiff and **THE CITY OF NEW YORK** invoiced the property on March 2, 2014, the same date of the arrest.    There was no form and more importantly, there was no "Krimstock Hearing".  At the hearing, **THE CITY OF NEW YORK** through the New York City Police Department would have had the burden to demonstrate the vehicle should remain impounded.  Notably, at that time, the issue of whether or not there was probable cause for the stop and arrest would have been addressed.  Claimant in this case was deprived of this hearing and therefore, deprived of the determination at that juncture as to whether or not there was probable cause to arrest.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

115.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

116.   Defendants acted in concert to fabricate the charges.

117.   Defendants acted in their own personal interest, and not in the interest of the STPD, in fabricating the charges against the Plaintiff. *See Lewis v. Havernack,* No. 12 Civ. 0031, 2013 WL 1294606, at *13 (N.D.N.Y. March 28, 2013); *Hill v. City of New York,* No. 03 Civ. 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that the plaintiff's allegations that the defendants conspired to cover-up one of the defendant's alleged use of excessive force was sufficient to apply the "personal stake" exception to the intracorporate conspiracy doctrine); *Alvarez v. City of New York,* 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012) (same). *Cf. K.D. ex rel. Duncan v. White Plains Sch. Dist.,* 921 F.Supp.2d 197, 210 (S.D.N.Y.2013) (finding the exception inapplicable because the complaint alleged that the defendants were "on duty" and acting "within the scope of their employment" at the time of the alleged conspiracies).

118.   All the defendants, acting with each other individually and on behalf of and under the auspices and control of the City, and under color of law, conspired to injure plaintiff in her person and property and deprive plaintiff of his First, Fourth, Fifth and Fourteenth Amendment rights. The defendants jointly caused such deprivation of rights by acting in concert to disseminate false information concerning the plaintiff and by disseminating false information that lacked any reasonable basis or probable cause to support it that the plaintiff committed a crime, and/or to charge her with a crime, and/or to arrest her.

119.   The defendants further deprived the plaintiff of her due process rights specifically by conspiring to and assisting in the arrest of the plaintiff without probable cause and participating in the prosecution of plaintiff; by denying the plaintiff his First, Fourth, Fifth and Fourteenth Amendment rights via a conspiracy to deprive the plaintiff of his liberty and taking his property

without due process and compensation; conspiring together to cover up the misconduct they committed; and preventing the plaintiff from being compensated for his wrongful arrest, for the loss of his constitutional rights, the loss of his job and for the emotional harm he incurred.

120. The defendants' failure to stop these wrongful acts and actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

121. The defendants knew or should have known that the misconduct and false and fabricated accusations and/or charges against plaintiff were violative of his First, Fourth, Fifth and Fourteenth Amendment rights to due process and equal protection, and were tantamount to unequal protection under the law, in violation of the plaintiff's fundamental rights under the Constitution.

122. Said defendants had the power to prevent the continued due process violations against the plaintiff, yet had failed to prevent the dissemination of false information and/or to dismiss the fabricated accusations and charges against plaintiff, and/or to protect the plaintiff from the unwarranted and potential harm and penalties of said charges.

123. Defendants herein, their agents, servants and employees, motivated in part by racial and/or ethnic animus, conspired to deprive plaintiff of his federal civil and constitutional rights, in violation of 42 U.S.C. § 1985 and the laws and Constitution of the State of New York

124. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY THE CITY OF NEW YORK**
**CLAIM FOR *MONELL* LIABILITY**

125. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

126. At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting

through its police department and through Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** had in effect actual and/or *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

127.   At all times material to their complaint, Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants **THE CITY OF NEW YORK, POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

128.   Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants **THE CITY OF NEW YORK POLICE OFFICER JUAN SANTIAGO (SHIELD #9507), POLICE OFFICER RUBEN SERRANO (SHIELD #13592) and POLICE OFFICERS JOHN DOE #1-4** being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline. Defendant **THE CITY OF NEW YORK** being aware that the persistent and substantial risk of improper detention of persons based upon insufficient or incorrect information, and effective training, screening, supervision and discipline would lessen the likelihood of such occurrences. These are recurrent circumstances which involve such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **THE CITY OF NEW YORK**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the

harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

129. The existence of the above-described *de facto* unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and Police Officers and defendant **THE CITY OF NEW YORK**, including but not limited to the NYPD.

130. At the time of the aforementioned constitutional violations, **THE CITY OF NEW YORK** and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of **THE CITY OF NEW YORK**'s NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the correction officers come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but **THE CITY OF NEW YORK** and NYPD made no meaningful attempt to prevent future constitutional violations.

131. Defendant **THE CITY OF NEW YORK** knew or should have known that the acts alleged herein would deprive Plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

132. Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

133. Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD and **THE CITY OF NEW YORK**, including the NYPD, have not taken steps to terminate these policies, practices and/or

customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

134.   The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff without probable cause and then kept her in unsanitary and inhuman conditions.

135.   Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the employees, representatives and/or agents failed to intervene in or report Defendants' violations of Plaintiff's rights.

136.   Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their employees, agents and representatives of NYPD.

137.   As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

138.   In this case, there was: Police withholding evidence and/or misrepresenting or falsifying evidence; overall inadequate police work and inadequate prosecutorial work-up of the case; and permitting and/or enforcing false arrest and placing Plaintiff in unsafe and unconstitutional conditions of confinement.

139.   The acts complained of were carried out by the aforementioned defendants in their capacities as officers pursuant to customs, policies, usages, practices, procedures and rules of the City,

NYPD, all under the supervision of higher-ranking representatives, employees and/or agents of the NYPD.

140.   The aforementioned customs, practices, procedures and rules of the City and NYPD include, but are not limited to: 1) arresting persons known to be innocent in order to meet "productivity goals"; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

141.   At the time of the aforementioned constitutional violations, **THE CITY OF NEW YORK** and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of City and NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but **THE CITY OF NEW YORK** and NYPD made no meaningful attempt to prevent future constitutional violations.

142.   The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the following civil rights actions and parallel prosecutions of police officers:

a) Colon v. City of New York, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29, 2009 denying the City's motion to dismiss on Iqbal/Twombley grounds, wherein the police officers at issued were and prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote:

'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

b) <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated

evidence against an African-American man in Kings County and initiated drug charges against

him, despite an absence of an quantum of suspicion);

c) <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.)(officers fabricated

evidence including knowingly false sworn complaints, against an African-American man in

Kings County and initiated drug charges against him, despite an absence of any quantum of

suspicion);

143.    The existence of the aforesaid unconstitutional customs and practices, specifically with regard to

the practice or custom of officers lying under oath, falsely swearing out criminal complaints or

otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

a) Morgan Cloud, The Dirty Little Secret, 43 EMORY L.J. 1311, 1311-12 (1994) ("Judges, prosecutors, defense lawyers, and repeat offenders all know that police officers lie under oath."); Jerome H. Skolnick, Deception by Police, CRIM. JUST. ETHICS, Summer/Fall 1982, at 40, 42 (concluding that police "systematic[ally]" perjure themselves to achieve convictions); ALAN M. DERSHOWITZ, THE ABUSE EXCUSE 233 (Hachette Book Group 1994) (suggesting that "recent disclosures about rampant police perjury cannot possibly come as any surprise" to those who have practiced criminal law in state or federal courts); ALAN M. DERSHOWITZ, THE BEST DEFENSE xxi-xxii (Random House   1983) ("Almost all police lie about whether they violated the Constitution in order to convict guilty defendants."); Deborah Young, Unnecessary Evil: Police Lying in Interrogations, 28 CONN. L. REV. 425, 427 (1996) (asserting that "the reported cases of police lying represent only a fraction of the actual cases in which police lying occurred"); David Kocieniewski, Perjury Dividend-A Special Report, N.Y. TIMES, Jan.5, 1997, at A1 (noting that according to one New York police officer, "lying under oath was standard procedure"); Lie Detectors Could Curb Police Perjury, USA TODAY, Aug. 1, 1996, (Magazine), at 13 ("[M]any experienced trial lawyers have said they believe police officers frequently lie on the stand."); Joseph D. McNamara, Has the Drug War created an Officer Liars' Club?, L.A. TIMES, Feb. 11, 1996, at M1 (noting recent perjury scandals have surfaced in police departments in Los Angeles, Boston, New Orleans, San Francisco, Denver, New York, and other large cities; and stating "[H]undreds of thousands of law-enforcement officers commit felony perjury every year testifying about drug arrests.").

b) The Mollen Commission concluded that police perjury and falsification of official records

is probably the most common form of police corruption facing the criminal justice system.

It concluded:

> Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their superiors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.1 {...} What breeds this tolerance is deep-rooted perception among many officers of all ranks within the Department that there is nothing really wrong with compromising the facts to fight crime in the real world. Simply put, despite devastating consequences of police falsifications, there is a persistent belief among officers that it is necessary and justified, even if it is unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get the suspected criminal off the streets. This is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty." *See,* Mollen Commission Report pgs 36-41.

144.   The existence of the aforesaid unconstitutional customs and policies, specifically with regard to

"productivity goals," may be further inferred from the following: Deputy Commissioner Paul J.

Browne has repeatedly admitted that NYPD commanders are permitted to set "productivity

goals."4

145.   The existence of the aforesaid unconstitutional customs and practices, specifically with regard to

the failure to supervise, train, instruct, and discipline police officers, encouraging their

misconduct, and exhibiting deliberate indifference towards the constitutional rights of persons

with whom officers come into contact are further evidenced, inter alia, by the following:

a) In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in
Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noticed a "widespread...
custom or policy by the city approving illegal conduct" such as lying under oath and false
swearing, NYPD Commissioner Raymond Kelly acknowledged, "When it happens, it's not
for personal gain. It's more for convenience."

b) Regarding Defendant City's tacit condonement and failure to supervise, discipline o
provide remedial training when officers engage in excessive force, the Civilian Complaint
Review Board is a City agency, allegedly independent of the NYPD, that is responsible for
investigating and issuing findings on complaints of police abuse and misconduct. When it does,
however, Commissioner Kelly controls whether the NYPD pursues the matter and he alone has
the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure,
only one quarter of officers whom the CCRB found engaged in misconduct received
punishment more severe than verbal "instructions." Moreover, the number of CCRB-
substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline)
has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and
approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases
sent to it by the CCRB in 2009. As a result, the percentage of cases where the CCRB found

---

4 Jim Hoffer NYPD Officer claims pressure to make arrests WABC-TV Eyewitness News, March 22010, available
at http:J/abclocal.go.com/Wabc/story?section=news/investigators&id=7305356 ("Police Officers like others who
receive compensation are provided productivity goals and they are expected to work").

misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[5]

146. The existence of the above-described de facto unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and defendant **THE CITY OF NEW YORK**, including without limitation, the Police Commissioner.

147. All of the foregoing acts by defendants deprived Plaintiff of her federally protected rights, including, but limited to, the constitutional rights enumerated herein.

148. Defendant **THE CITY OF NEW YORK** knew or should have known that the acts alleged herein would deprive Plaintiff of her rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

149. Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD and to require compliance with the Constitution and laws of the United States.

150. Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD and **THE CITY OF NEW YORK**, including the Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

---

5 Daily News, Editorial: City Leaders Must Get Serious About Policing the Police, August 20, 2008.

151.   The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff, medicate and confine her thus, making blatant violations of Plaintiff's constitutional rights.

152.   Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the employees, representatives and/or agents failed to intervene in or report Defendants' violations of Plaintiff's rights.

153.   Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their agents, employees, or representatives.

154.   These is a clear causal connection between the actions of **THE CITY OF NEW YORK** and the constitutional violations in this case.  Here, **THE CITY OF NEW YORK** caused and is implicated in the constitutional violations and thus, should be held liable for the unconstitutional actions taken by the police officers.

155.   Here, it is clear that **THE CITY OF NEW YORK** took action by their hiring and   retention, which is sufficient to expose them to liability. *Amnesty America v. Town of West Hartford,* 361 F3d 113, 125 (2d Cir. 2004).

156.   Upon information and belief, **THE CITY OF NEW YORK** was on notice that these policies were being unconstitutionally applied by inadequately trained medical staff and consciously has chosen not to train them or hire staff more adequate. *City of Canton,   Ohio v. Harris,* 489 US 378 at 387.

157.   By being aware of the medical staff's unconstitutional actions and consciously ignoring them, this in turn can mean that **THE CITY OF NEW YORK** ratified the defendants'   actions. *See, Sorlucco v. New York City Police Dept.,* 971 F2d 864, 870-871 (2d Cir. 1992) (municipality lies

where the subordinate's misconduct is "so manifest, as to imply the constructive acquiescence of senior policymaking officials").

158.   As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical injury,  psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

    a.   Compensatory damages;

    b.   Punitive damages;

    c.   Declaratory relief;

    d.   Injunctive relief;

    e.   The convening and empanelling of a jury to consider the merits of the claims herein;

    f.   Costs and interest and attorneys' fees;

    g.   Such other further relief as ther court may deem appropriate and equitable.

Dated:    New York, New York
           May 27, 2016

Respectfully submitted,

**NOVO LAW FIRM, PC**
*Attorney for Plaintiff*

By: Ellie A. Silverman, Esq. (4701868)
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6686
**File No. 14-5354**
ellies@novolawfirm.com

28